# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cr-00125-BP-42 |
| ) | |
| ANNA LILIA LEAL-MARTINEZ, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT ANA LILIA LEAL-MARTINEZ'S
## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

COMES NOW the defendant, Anna Lilia Leal-Martinez, by and through the undersigned counsel, and hereby respectfully provides to this Honorable Court this Sentencing Memorandum to aid the Court in imposing a sentence which is sufficient but not greater than necessary to serve the objectives of sentencing, as reflected in 18 U.S.C. § 3553(a).

Ms. Leal-Martinez is a forty-eight (48) year old woman with no criminal history who has lived a hard life of poverty, abuse and trauma, first in Mexico, and then in United States as an illegal alien for the past twenty-eight (28) years. The attached letters of support speak to Ms. Leal-Martinez's resolve and character notwithstanding the instant offense. Ms. Leal-Martinez has pled guilty and acknowledged and accepted her wrongful conduct in this case.

Respectfully, and for the reasons set forth more fully below, Ms. Leal-Martinez also hereby moves this Honorable Court to vary downward from the sentencing guidelines and impose a sentence of thirty-five (35) months imprisonment. In further support of the requested downward variance, and to aid the Court in fashioning an appropriate sentence, Ms. Leal-Martinez provides the following information for the Court's consideration.

1

# I.
# INTRODUCTION

On July 1, 2024, Ms. Leal-Martinez stood before this Court and, pursuant to a plea agreement, entered a plea of guilty to Count Three of the superseding indictment charging her with committing conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A), 1956(a)(1)(B)(i) and 1956(h). (Docs. 944, 945). Ms. Leal-Martinez also agreed to forfeit to the United States the property described in Forfeiture Allegation Two of the superseding indictment. (Doc. 945, p. 1). In exchange for her plea of guilty, the government agreed to dismiss Count Two and Forfeiture Allegation One at the time of sentencing. (Doc. 945, p. 6). Additionally, given Ms. Leal-Martinez's illegal alien status, the offense to which she pled guilty will affect her immigration status, as the offense carries a presumption of mandatory removal from the United States. (Doc. 945, p. 13).

The factual basis for Ms. Leal-Martinez's plea related to the fact that she was the owner of a business in Kansas City, KS, and that business offered, in part, money transfer services at her business. (Doc. 945, p. 2). Ms. Leal-Martinez knew a co-conspirator through past business interactions who would provide Ms. Leal-Martinez money from drug proceeds to then wire to individuals in Michoacan, Mexico. Between January 1, 2022, through June 8, 2022, Ms. Leal-Martinez sent wire transfers totaling $83,850.00 to Michoacan from her business in furtherance of the money laundering conspiracy. (Doc. 945, p. 2-3). There is nothing set forth in the plea agreement indicating that Ms. Leal-Martinez received compensation for sending the wire transfers.

The guideline range calculated by the United States Probation Office indicates a range of 70 months to 87 months imprisonment. (Doc. 1137, p. 12). However, Ms. Leal-Martinez respectfully asks this Court to consider her history – traumatic at times, abusive at others, but always trying to persevere – as well as the letters of support from those that know her and vary

downward from the guideline range and impose a sentence of thirty-five (35) months imprisonment, or half of the low end of the guideline range.

## II.
## STANDARDS FOR IMPOSING SENTENCE

As the Supreme Court established in *United States v. Booker*, 543 U.S. 220 (2005), *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), a sentencing court has broad discretion to consider nearly every aspect of a particular case (and a particular defendant) in fashioning an appropriate sentence. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (citing *Koon v. United States*, 518 U.S. 81, 113 (1996)). It is axiomatic that *Booker* rendered the sentencing guidelines advisory rather than mandatory. *Booker*, 543 U.S. at 264. The *Kimbrough* Court stressed that the sentencing judge is not bound by the Guidelines or Guidelines Policy Statements; rather, he may make his own policy judgments, even if those judgments are different than those provided for in the guidelines. *Kimbrough*, 552 U.S. at 101. *See also, Spears v. United States*, 555 U.S. 261, 264-265 (2009).

The primary federal statutes governing sentencing in the federal district courts are 18 U.S.C. § 3553(a) and 18 U.S.C. § 3661. Section 3553(a) contains an introductory portion and seven subsections. The introductory portion directs the sentencing court, in determining a particular sentence, to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from future crimes of the defendant,

3

and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the guidelines; (5) guidelines policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. The introductory portion of § 3553(a) also directs the sentencing court to "impose a sentence sufficient but not greater than necessary" to comply with the purposes of subsection (2). Indeed, this is "the overarching goal in federal sentencing." *Freeman v. United States*, 131 S.Ct. 2685, 2692 (2011).

Of crucial importance, 18 U.S.C. § 3661 makes it clear that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Put simply, in addition to the § 3553(a) sentencing factors, the court may receive and consider *any* information concerning the defendant's background, character, and conduct in imposing a sentence. The Supreme Court highlighted the centrality of this concept: "In particular, we have emphasized that '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (citations omitted).

**III.
THE HISTORY, CHARACTERISTICS, BACKGROUND,
CHARACTER AND CONDUCT OF MS. LEAL-MARTINEZ JUSTIFY A
DOWNWARD VARIANCE AND SENTENCE OF 35 MONTHS.**

A. <u>Ms. Leal-Martinez's Traumatic Childhood in Mexico</u>.

4

Ms. Leal-Martinez's first memories as a child are not pleasant memories. She recalls vaguely remembering her life around four (4) to five (5) years old. Her dad was a construction worker, and her mom mostly stayed at home until she started cleaning houses. Ms. Leal-Martinez reports that her dad was abusive – verbally, physically and sexually.

Ms. Leal-Martinez recalls watching – at around the age of five (5) – her dad repeatedly beating her mother with his fists while her dad would hold her mom by the hair. One time after her mom was beaten by her dad, Ms. Leal-Martinez asked her mom why her dad would beat her. Her mother told her it was because she had a miscarriage.

Ms. Leal-Martinez remembers that her dad was "very loving" but she "didn't like the way he would give me affection." As a little girl, she remembers her dad constantly kissing her on the lips. She did not like it. When she told her dad she did not like the way he was kissing her, her dad would simply laugh and continue. Although Ms. Leal-Martinez did not know it at the time, her older cousin told her "it was not normal the way he was kissing me." Today, Ms. Leal-Martinez remembers being a little girl around seven (7) years old when she was told that "her private parts were not normal" for that age. She indicates that she was molested by her dad. Ms. Leal-Martinez's dad "eventually stopped" paying sexualized attention to her when she was thirteen (13) years old. At that time, she now had two little sisters. Her dad would "do weird things" to her younger sisters. She remembers her dad would tell her sisters to "kiss each other's ears" and other inappropriate sexualized comments. However, at this point in time, Ms. Leal-Martinez was simply trying not to be around her dad at all, so she did not know the extent of what was happening with her sisters.

Ms. Leal-Martinez also suffered abuse at the hands of her mother. When her mom was upset and angry from working or her husband beating her, she would wait until Ms. Leal-Martinez's dad left, and then she would unleash her aggression on Ms. Leal-Martinez, who recalls

5

Case 4:22-cr-00125-BP    Document 1166    Filed 10/18/24    Page 5 of 12

the beatings starting at around eight (8) years old. Ms. Leal-Martinez remembers her mom pulling her up by the hair and holding her so her feet were off the ground and hitting her with a belt, sandals and her hands. Ms. Leal-Martinez remembers the beatings stopped around when she was twelve (12) years old, but they eventually started up again as she reached her mid-teens. Ms. Leal-Martinez tried to stay away from her family as much as she could. This resulted in many nights of not having food or a place to stay. She reported that she tried to kill herself around sixteen (16) years old.

There is precedent supporting the award of a non-guidelines sentence where the defendant has suffered abuse or neglect as a child, where the defendant grew up in impoverished settings, or where the defendant lacked the guidance of an absent or incarcerated parent. *See, e.g., United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (finding non-guideline sentence of 84 months was sufficient but not greater than necessary based on § 3553(a) factors, including the murder of defendant's father, abuse by mother and uncle, and having been shuffled between foster homes until adulthood); *United States v. Ruiz*, 2009 WL 636543, 2009 U.S. Dist. LEXIS 19669 (S.D.N.Y., March 11, 2009) (District Court imposed 96 months rather than guideline range of 140-175 months for crack offenses in part due to defendant's difficult childhood with abusive mother and largely absent father who was incarcerated and a heroin addict, and the absence of any prior substance abuse assistance).

Ms. Leal-Martinez was a child born into poverty, abuse and trauma. Ms. Leal-Martinez respectfully requests that the Court take her upbringing into account when fashioning an appropriate sentence in this case.

  B. <u>Ms. Leal-Martinez's Struggle Upon Coming to the United States</u>.

Ms. Leal-Martinez recalls coming to the United States when she was approximately 18-19 years old. Her older brother resided in New York so that is where she went to live. It was hard for her to find work. Ms. Leal-Martinez worked on and off as a waiter. It was hard to work and take care of her son and pay rent. She lived in the Bronx and would work in Queens, New York – which would take her approximately two (2) hours by train to get to work every day. Sometimes she wouldn't have anything to eat. She lived in a split living room, only having a mattress on the floor and a sheet hanging from the ceiling to give her a little privacy. There were cockroaches all over the apartment and eventually family services had to get involved. She ended up meeting a man George, who was twenty-nine (29) years her senior. She had a son with George. However, George too would verbally abuse her, saying that because she is Mexican, she "is always going to be cleaning toilets," and all her son is "ever going to be is a dishwasher."

Ms. Leal-Martinez eventually ended the relationship with George, and she met Rolando Zarte when she was approximately twenty-two (22) years old. Rolando was a taxi driver, and she would eventually have a son with him – Rolando Zarte, Jr. – with whom she still lives and cares for. However, Mr. Zarte, Sr. had drinking problems. He would get angry, aggressive and violent. Ms. Leal-Martinez remembers when she was approximately eight (8) months pregnant, Mr. Zarte, Sr. was drinking, became angry and put a knife to her stomach and stated that "we are all going to die." Mr. Zarte, Sr. would beat Ms. Leal-Martinez after she gave birth. She recalls one incident where she was being hit, and Mr. Zarte, Sr. put her on the floor and put his knees on her arms and kept hitting her. She does not remember much but believes the neighbors called the police because she stayed the night in a women's domestic violence shelter. Ms. Leal-Martinez did not press charges. Two weeks later, Mr. Zarte, Sr. was begging for Ms. Leal-Martinez to let him back in her

7

life. She did, but only on the condition that he stopped drinking, which he did for about ten (10) years. They would eventually move to Kansas together, where Mr. Zarte, Sr.'s brother was living.

There is precedent in this Circuit for granting a downward variance based, at least in part, on domestic abuse suffered by a defendant. *See Galloway v. United States,* 2023 U.S. Dist. LEXIS 100644, at *5 (N.D. Iowa, June 9, 2023) ("[The defendant] filed a motion…for a downward variance based, in part, on her family background, including past domestic abuse, child custody and her employment history. I granted that motion, varying downward[.]"). Ms. Leal-Martinez respectfully asks this Court to consider her family background and past domestic violence abuse in fashioning an appropriate sentence in this case.

      C.      <u>Ms. Leal-Martinez's Life in Kansas</u>.

Ms. Leal-Martinez believes she moved to Kansas around 2006-2007. When Mr. Zarte, Sr. was not drinking, he was good to her. But when he drank, he became very offensive – he would tell her she "was worthless" and that she "was a whore." There would be times where they did not have food to eat and would survive on just milk and bacon from the homeless shelter. Around 2011, Ms. Leal-Martinez was able to secure a $5,000.00 loan from her ex-boyfriend George. The money then went to create a store in Kansas called "La Chappirita." However, everything had to be put in Mr. Zarte, Sr.'s name because Ms. Leal-Martinez was an illegal alien. This created huge control problems between the two of them. Despite the abuse, Ms. Leal-Martinez married Mr. Zarte, Sr. in hopes of becoming a United States citizen. However, he would not help her at all. He started taking steroids which would affect his mood and he would revert back to belittling and demeaning Ms. Leal-Martinez. She stated that she stopped living with Mr. Zarte, Sr. in January 2019. She was then living in her car for two weeks. The godmother of her child noticed and let her

8

live in her house to sleep. Ms. Leal-Martinez would take showers at a local gym and still live out of her car at times.

Luckily, Ms. Leal-Martinez was able to meet and eventually marry her current husband Juan Islas-Suarez in 2021. For the first time, Ms. Leal-Martinez has a man in her life that does not treat her like an object to abuse when someone gets mad. It had only taken her over forty (40) years to find one.

### D. The Submitted Letters Speak to Ms. Leal-Martinez's Character.

The family and emotional support that a defendant can be expected to receive from family and community members is another recognized basis for a downward variance. *United States v. Sayad*, 589 F.3d 1110, 1114-1115 (10th Cir. 2009); *United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (family support one of several valid grounds for downward variance from 41-51 months to probation); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008) (family support is one of three valid reasons for 91-month downward variance). Attached as Exhibits 1 through 4 are letters from family and friends of Ms. Leal-Martinez.

The letters speak to the hardships Ms. Leal-Martinez has suffered, but also her ability to endure and help others that are in tough situations, even despite Ms. Leal-Martinez's own life difficulties. Exhibit 1 is from a friend, Blanca Miranda, who speaks to Ms. Leal-Martinez's ability to help other women who have also suffered abuse or hardship. *See* Exhibit 1, p. 1 ("I have seen [Ms. Leal-Martinez] fall and get back up and it is something that I deeply admire about her, that with all the suffering that she carries with her, she has been able to support more women, women who like her, have suffered violence and mistreatment at the hand of their partners. I myself have witnessed how people appreciate her, seek her out and respect her, and this can say more than a thousand words.")

Exhibit 2 is from her sister, Noemi Leal-Martinez. Noemi notes that her sister "has always been someone [she] can count on no matter the circumstances or obstacles life throws at her." (Exhibit 2, p. 2). Further, Noemi writes that she would argue that Ms. Leal-Martinez's "life has been more difficult than many of ours and yet, she manages to stay optimistic about everything and facing reality head on. [Ms. Leal-Martinez] always speaks the truth and is honest with everyone." (Exhibit 2, p. 2).

Exhibit 3 is from Ms. Leal-Martinez's son, Rolando Zarate, Jr. In his letter, he recalls the tireless work ethic of his mother. He also notes her perseverance, stating that "[m]y mother never takes her circumstances for granted. Instead, she is always a beacon of hope for those facing challenges and never lets anyone feel the weight of her own struggles." (Exhibit 3, p. 1).

The final letter, Exhibit 4, is from Alayna Istre, a friend of Ms. Leal-Martinez who has known her for only for a year. But even in that short time, Ms. Istre writes that Ms. Leal-Martinez has been a godsend to her. "At a time when I felt lost and had nowhere to turn, Ana opened her doors to me and treated me as if I were her own daughter, teaching me to adopt a positive outlook even in tough situations. Despite facing numerous challenges, Ana's remarkable strength and resilience showed me that true courage means standing firm in adversity while allowing oneself to be vulnerable." (Exhibit 4, p. 1).

These letters and testimony that may be presented at sentencing in this matter show that not only would Ms. Leal-Martinez receive support from the community, but she would provide support to those who need it – even while she was facing incredibility serious criminal charges and knowing her life is about to change forever.

    E.    <u>The Totality of the Sentencing Information Provides a Basis for a Downward Variance</u>.

Ms. Leal-Martinez has pled guilty and accepted responsibility for her conduct in this case. There is no criminal history listed in the presentence investigation report. Ms. Leal-Martinez has been on pretrial release for more than two (2) years with no violations. It is likely that after any sentence is imposed and completed by Ms. Leal-Martinez, she will then be removed from this country. The history of abuse suffered by Ms. Leal-Martinez is not merely presented to elicit sympathy, but also to put in context how a woman like Ms. Leal-Martinez, after suffering abuse over dozens of years at the hands of men, may make wire transfers directed by another male figure without questioning or arguing with that male figure. Ms. Leal-Martinez acknowledges her wrongful conduct, but also believes a downward variance is appropriate given the additional information presented to this Court to ensure a sentence which is sufficient but not greater than necessary to serve the objectives of sentencing.

## **CONCLUSION**

WHEREFORE, based on all the information available to the Court, Ms. Leal-Martinez respectfully moves this Honorable Court to vary downward from the sentencing guidelines and sentence Ms. Leal-Martinez to a term of thirty-five (35) months imprisonment.

Respectfully submitted,

**JOHNSTON LAW FIRM, LLC**

By: /s/ Jonathan D. Bailey
Jonathan D. Bailey  MO #65386
811 Grand Blvd., #101
Kansas City, MO 64106
Phone: 816-787-0310
Fax: 816-421-5403
E-Mail: jon@johnstonlawkc.com

***ATTORNEY FOR DEFENDANT
LEAL-MARTINEZ***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on October 18, 2024, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/s/ Jonathan D. Bailey
Jonathan D. Bailey
*Attorney for Defendant Leal-Martinez*